## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| v. | § | Case No. 1:23-cr-66-HSO-BWR-1 |
| | § | |
| | § | |
| | § | |
| | § | |
| KEVIN LETTERMAN | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT KEVIN LETTERMAN'S MOTION [32] TO DISMISS

This matter comes before the Court on Defendant Kevin Letterman's ("Letterman" or "Defendant") Motion [32] to Dismiss the Indictment [3] in this case under Rule 12 of the Federal Rules of Criminal Procedure.  The Motion [32] argues that Defendant's Indictment [3] for violating 18 U.S.C. § 922(g)(1), which makes it illegal for anyone to possess a firearm "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," should be dismissed because, as applied to him, § 922(g)(1) violates the Second Amendment of the United States Constitution given the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).  Defendant also cites *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 143 S. Ct. 2688 (June 30, 2023), and *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), which held § 922(g)(8) unconstitutional and § 922(g)(3) unconstitutional as

applied, respectively.

Because *Bruen* did not clearly abrogate Fifth Circuit precedent holding
§ 922(g)(1) constitutional under the Second Amendment as applied to any individual
with a qualifying prior conviction, and neither *Rahimi* nor *Daniels* states otherwise,
this Court will deny Defendant's Motion [32] to Dismiss.

## I. BACKGROUND

On May 16, 2023, a grand jury sitting in this District indicted Defendant
Kevin Letterman for violating 18 U.S.C. § 922(g)(1) by knowingly possessing a
firearm while knowing that he had previously been convicted of a crime which is
punishable by imprisonment for a term exceeding one year.  Doc. [3] (Indictment).
The Indictment [3] charged Defendant with violating § 922(g)(1) on or about April
16, 2023.  *Id.* at 1.

In his Motion [32] to Dismiss, Defendant admits that he "has a 2010 felony
conviction for simple burglary of an automobile, a 2010 felony conviction for
unauthorized use of a motor vehicle, and a 2015 felony conviction for possession of
marijuana," which—according to him—are "all Louisiana state law offenses and all
non-violent offenses."  Doc. [32] at 1.  The Government responds that "Letterman
was on felony bond and an ankle monitor at the time of his arrest for being a felon
in possession of a firearm in Louisiana."  Doc. [34] at 8.  Notably, Defendant
characterizes his argument as an as-applied challenge, but he argues categorically
that "the government cannot establish a historical tradition of completely and
permanently stripping persons with felony convictions of their Second Amendment

rights." Doc. [32] at 9. While Defendant's assertion that all his prior felony convictions are non-violent crimes appears to form the basis of his as-applied theory, he does little to flesh out such a theory, instead couching his arguments in terms of the general unconstitutionality of § 922(g)(1). *See generally id.* In any event, the Court is of the view that Fifth Circuit precedent holding § 922(g)(1) constitutional in all its applications—including to defendants with only non-violent prior convictions—remains binding on this Court. *See United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003) (holding that "[§] 922(g)(1) does not violate the Second Amendment" without discussing a distinction between defendants with violent or nonviolent prior convictions); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) (holding that § 922(g)(1) is constitutional "[i]rrespective of whether his offense was violent in nature" because "a felon has shown manifest disregard for the rights of others"). [1]

## II. DISCUSSION

Fifth Circuit precedent that holds § 922(g)(1) constitutionally valid under the Second Amendment remains binding on this Court. To explain why, the Court first reviews the Fifth Circuit cases that recognized the individual right to bear arms under the Second Amendment prior to *District of Columbia v. Heller*, 554 U.S. 570 (2008), along with Fifth Circuit cases holding that § 922(g)(1) is constitutional. The Court then discusses *Heller* and the Fifth Circuit's reaffirmation of its precedent

---

[1] Though neither *Darrington* nor *Everist* confronted as-applied challenges under the Second Amendment, both reasoned that § 922(g)(1) was not overbroad because prohibiting all felons from possessing firearms was consistent with the Second Amendment. *See infra*, Part II.A.

upholding § 922(g)(1) post-*Heller*. The Court will next outline the two-step test that the Fifth Circuit later adopted in *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives* [*NRA*], 700 F.3d 185 (5th Cir. 2012), *abrogated by New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and how *Bruen* abrogated the second, means-ends-scrutiny step of *NRA*'s test. The Court ultimately concludes that nothing in *Bruen* abrogates Fifth Circuit precedent on § 922(g)(1)'s constitutionality, and that neither *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 143 S. Ct. 2688 (June 30, 2023), nor *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), dictates otherwise.

A.     The Fifth Circuit recognizes the individual but limited right to bear arms

In *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), the Fifth Circuit considered a Second Amendment challenge to § 922(g)(8). In addressing this issue, the Court first held that the Second Amendment protects an individual right to bear arms, not merely a collective right held by members of a militia. *See id.* at 232 ("The plain meaning of the right of the people to keep arms is that it is an individual, rather than a collective, right and is not limited to keeping arms while engaged in active military service or as a member of a select militia such as the National Guard."). *Emerson* gave "the same meaning to the words 'the people' as used in the Second Amendment phrase 'the right of the people' as when used in the exact same phrase in the contemporaneously submitted and ratified First and Fourth Amendments." *Id.* at 227.

*Emerson* then considered whether § 922(g)(8), which prohibits individuals subject to civil protective orders from possessing firearms, violated the Second Amendment facially and as applied to Mr. Emerson.  270 F.3d at 260.  Before addressing that question, *Emerson* discussed how Second Amendment rights may "be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country."  *Id.* at 261.  *Emerson* further emphasized: "it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms."  *Id.*  Though the validity of these prohibitions was not before the Fifth Circuit, the Court's statement about such policies illustrated how it viewed the scope of the Second Amendment given the historical evidence before it.

To support its discussion of the kinds of limits on Second Amendment rights that it viewed as permissible, the court in *Emerson* referred to an earlier footnote in the opinion that discussed historically accepted limits on the right to bear arms.  *See id.*  In that footnote, the Court "note[d] that recognition that the Second Amendment does not prohibit legislation such as former § 1202(a)(1)"—which it called "the then felon-in-possession statute"—"is in no way inconsistent with an individual rights model."  *Id.* at 226 n.21.  In support of this proposition, *Emerson* included the following parenthetical citation, which this Court quotes in full with all internal citations, quotation marks, and alterations included:

> *See, e.g., Robertson v. Baldwin*, 165 U.S. 275, 17 S.Ct. 326, 329, 41 L.Ed. 715 (1897) . . . (bill of rights protections are not absolutes but subject to

5

exceptions, so the First Amendment does not permit the publication of libels, the Second Amendment "is not infringed by laws prohibiting the carrying of concealed weapons," the double jeopardy clause does not preclude retrial where the jury fails to agree, the confrontation clause does not exclude dying declarations, etc.).  *See also* Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 OKLA L.REV. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, and felons [from possessing firearms]."); Stephen P. Halbrook, *What the Framers Intended:* A Linguistic Analysis of the Right to "Bear Arms", 49 LAW & CONTEMP. PROBS. 151 (1986) ("violent criminals, children, and those of unsound mind may be deprived of firearms . . . ."); Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 MICH. L. REV. 204, 266 (1983) ("Nor does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them.").

*Id.*

The Fifth Circuit then rejected Mr. Emerson's argument that a civil protective order must contain an "express judicial finding that the person subject to the order pose[s] a future danger" for the order to provide a constitutional basis to deprive him of his Second Amendment rights under § 922(g)(8).  *Id.* at 260, 263. The Fifth Circuit inferred that "Congress legislated against the background of the almost universal rule of American law that for a temporary injunction to issue . . . . '[a] presently existing actual threat must be shown.'"  *Id.* at 262 (quoting 9 Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* § 2948.1 at 153–56) (emphasis in original).

Two years later, the Fifth Circuit squarely confronted a Second Amendment challenge to § 922(g)(1) in *United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003). Mr. Darrington advanced a theory that § 922(g)(1) was unconstitutionally overboard under the Second Amendment because the class of persons that the statute covers—

all persons who have "been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," § 922(g)(l)—was not tailored to any "compelling interest in prohibiting violent offenders from obtaining firearms," Brief for Appellant at 20, *United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003) (No. 03-20052). The Court rejected this argument, holding that "[§] 922(g)(1) does not violate the Second Amendment." *Darrington*, 351 F.3d at 634. *Darrington* addressed the issue briefly, relying mostly on *Emerson*'s dicta about prohibitions that it stated were constitutional and the historical sources that it cited. *Id.* at 633–34. The Court noted that Mr. Darrington relied on *Emerson* for his Second Amendment challenge, but that "*Emerson* itself explained that the individual right it recognized does not preclude the government from prohibiting the possession of firearms by felons." *Id.* at 633. *Darrington* then quoted the following passage from *Emerson* in full:

> Although, as we have held, the Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country. Indeed, Emerson does not contend, and the district court did not hold, otherwise. As we have previously noted, it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms.

*Darrington*, 351 F.3d at 633–34 (quoting *Emerson*, 270 F.3d at 261).

   *Darrington* then pointed out that "*Emerson* also discusses authority that legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." *Id.* at 634 (citing *Emerson*, 270 F.3d at 226 n. 21). Without

further discussion, *Darrington* held § 922(g)(1) constitutional under the Second Amendment.  *Id.*

The Fifth Circuit doubled down on *Darrington* in *United States v. Everist*, 368 F.3d 517 (5th Cir. 2004).  Mr. Everist advanced the same theory as Mr. Darrington that § 922(g)(1) was not narrowly tailored to "a compelling interest in prohibiting violent offenders from obtaining firearms."  Brief for Appellant at 19, *United States v. Everist*, 368 F.3d 517 (5th Cir. 2004) (No. 03-20059).  The Fifth Circuit rejected this argument, emphasizing that "[t]he Second Amendment right is subject to 'limited narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country.'"  *Everist*, 368 F.3d at 519 (quoting *Emerson*, 270 F.3d at 261).  The Fifth Circuit found that "[i]t is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms."  *Id.*  It reasoned that, "*[i]rrespective of whether his offense was violent in nature*, a felon has shown manifest disregard for the rights of others," so, "[h]e may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens."  *Id.* (emphasis added).  *Everist* concluded that "§ 922(g)(1) represents a limited and narrowly tailored exception to the freedom to possess firearms, reasonable in its purposes and consistent with the right to bear arms protected under the Second Amendment."  *Id.*

B.   The Supreme Court affirms the individual but limited right to bear arms in
     *Heller*

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court interpreted the Second Amendment as the Fifth Circuit had in *Emerson*, holding "the Second Amendment conferred an individual right to keep and bear arms," which "was not unlimited." *Id.* at 595. *Heller* emphasized that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which the Court called "presumptively lawful regulatory measures." 554 U.S. at 626, 627 n.26.

As to "the people" who hold "the right . . . to keep and bear Arms," U.S. Const. amend. II, *Heller* explained that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580. In its explication of the phrase "the people," *Heller* did not address whether felons are among "the people" who hold "the right of the people to keep and bear Arms." *See id.* *Heller*'s point was that "the Second Amendment right is exercised individually," not collectively by those who are members of "an organized militia," as "the phrase 'the militia' in the prefatory clause" might otherwise suggest. *Id.* at 580–81.

Like *Emerson*, *Heller* held that the Second Amendment is an individual right. *Id.* at 595. But *Heller* also characterized prohibitions on felons possessing firearms as "longstanding" and "presumptively lawful regulatory measure[s]," *Heller*, 554 U.S. at 626, 627 n.26, just as *Emerson* stated that "it is clear that felons, infants

and those of unsound mind may be prohibited from possessing firearms," 270 F.3d at 261.

Accordingly, when a defendant convicted under § 922(g)(1) claimed that the statute violated the Second Amendment under *Heller*, the Fifth Circuit held that "*Heller* provides no basis for reconsidering *Darrington*." *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009). *Anderson* quoted *Heller*'s qualifier that it did not raise doubts about "longstanding prohibitions on the possession of firearms by felons," *id.* n.6 (quoting *Heller*, 554 U.S. at 626), and it "reaffirm[ed] *Darrington* and the constitutionality of § 922(g)," *id.*[2]

C.    The Fifth Circuit's *NRA* Two-Step test

After it reaffirmed *Darrington* in *Anderson*, in 2012, the Fifth Circuit adopted the "two-step inquiry [that had] emerged as the prevailing approach" among other circuit courts of appeals to determine the constitutionality of firearms regulations. *NRA*, 700 F.3d at 194. Under that test,

> the first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment—that is, whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny.

---

[2] In subsequent cases, the Fifth Circuit has noted how it has reaffirmed the constitutionality of § 922(g)(1) under *Heller*. *See United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) ("[W]e have reaffirmed our prior jurisprudence on [the constitutionality of § 922(g)(1)] since *Heller* was decided." (citing *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009)); *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017) (finding that Fifth Circuit precedent foreclosed the defendant's Second Amendment challenge to his § 922(g)(1) conviction).

*Id.* In short, the challenged law was unconstitutional under *NRA* if it 1) infringed on the original understanding of the Second Amendment right, and 2) failed applicable means-ends scrutiny. To apply the first step, a court would "look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *Id.* at 194. Importantly, even if the law failed step one, it could be upheld at step two. *See id.* at 195 ("If the law burdens conduct that falls within the Second Amendment's scope, we then proceed to apply the appropriate level of means-ends scrutiny."). At step two, a court would apply strict scrutiny if the law "threaten[ed] a right at the core of the Second Amendment—for example, the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family," and intermediate scrutiny if the law was "[a] less severe regulation" that covered conduct outside the core of the Second Amendment right. *Id.*

Having laid out this test, *NRA* found "it [] difficult to map" the "longstanding" and "presumptively lawful regulatory measures" discussed in *Heller* "onto this two-step framework." 700 F.3d at 196 (quoting *Heller*, 554 U.S. at 626, 627 n.26). To deal with this difficulty, *NRA* incorporated a clarification into the first, history-based step of its test: "a longstanding, presumptively lawful regulatory measure— whether or not it is specified on *Heller*'s illustrative list—would likely fall outside the ambit of the Second Amendment; that is, such a measure would likely be upheld at step one of our framework." *Id.*

11

D.    *Bruen* abrogates ahistorical means-ends scrutiny

In *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court considered "whether New York's licensing regime," under which the State of New York "condition[d] issuance of a license to carry on a citizen's showing of some additional special need . . . . for self-defense," violated the Second Amendment.  *Id.* at 2122.  The Court concluded that it did.  *Id.*

In so holding, *Bruen* abrogated the "two-step approach" used by courts of appeals such as the Fifth Circuit, *see NRA*, 700 F.3d at 194 (outlining the Fifth Circuit's two-step test as discussed *supra*, Part II.C.), because "*Heller* . . . do[es] not support applying means-end scrutiny in the Second Amendment context," *Bruen*, 142 S. Ct. at 2127.  *Bruen* replaced the two-step test employed by the courts of appeals with the following test: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2129–30.

To apply this test, *Bruen* first stated that "[i]t is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."  *Id.* at 2134 (citing *Heller*, 554 U.S. at 580). *Bruen* evidently considered this a threshold issue.  *Bruen* then held that 1) the Second Amendment's text covers carrying guns—that is, "bear[ing] arms"—outside the home; and 2) that "the historical record compiled by [New York did] not demonstrate a tradition of" either "broadly prohibiting the public carry of commonly

used firearms for self-defense" or "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 2134–35, 2138.

Importantly, nothing in *Bruen* explicitly abrogated *Darrington*'s reasoning that § 922(g)(1) "does not violate the Second Amendment" because "legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." 351 F.3d at 634 (citing *Emerson*, 270 F.3d at 226 n. 21). If *Darrington* stands, then *Anderson*—which reaffirmed *Darrington* after *Heller*— likewise stands.

It is true that *Darrington* addressed the constitutionality of § 922(g)(1) briefly and without identifying a specific founding-era prohibition on the possession of firearms by felons. It instead relied on a lengthy footnote in *Emerson*, which cited academic articles on the traditional limits of the right to bear arms. *See Darrington*, 351 F.3d at 633–34 (citing *Emerson*, 270 F.3d at 261, 226 n.21). But a district court cannot decide that it is unsatisfied with the Fifth Circuit's historical analysis under intervening Supreme Court precedent. Arguably, a district court cannot decide *Bruen* abrogates Fifth Circuit precedent at all. *See, e.g.*, *United States v. Schnur*, No. 1:23-CR-65-LG-BWR-1, 2023 WL 4881383, at *3 (S.D. Miss. July 31, 2023) ("[D]istrict courts 'have no power to declare that an intervening Supreme Court case inters an otherwise-binding Fifth Circuit case.'" (quoting *United States v. Jordan*, 650 F. Supp. 3d 531, 538 (W.D. Tex. 2023))).

Even if this Court could decide whether Fifth Circuit precedent has been abrogated, *Bruen* does not unequivocally abrogate *Darrington* and *Anderson*, so this Court is bound to hold § 922(g)(1) constitutional under the Second Amendment.  *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) ("[F]or a Supreme Court decision to change [the Fifth] Circuit's law it . . . must unequivocally overrule prior precedent.") (internal citations and quotation marks omitted).

E.   *Rahimi did not hold that Bruen abrogated Darrington and Anderson*

To avoid the conclusion that *Darrington* and *Anderson* survived *Bruen*, Letterman points the Court to the Fifth Circuit's statement in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 143 S. Ct. 2688 (June 30, 2023), that "*Bruen* clearly 'fundamentally change[d]' [its] analysis of laws that implicate the Second Amendment, rendering [its] prior precedent obsolete." *Rahimi*, 61 F.4th at 450–51 (quoting *Bonvillian Marine*, 19 F.4th at 792). Letterman asserts that this passage declared all Fifth Circuit precedent on the Second Amendment abrogated, not just that which relied on means-ends analysis. This Court concludes that it did not.

In holding § 922(g)(8) facially unconstitutional, *Rahimi* overruled *Emerson*'s holding that § 922(g)(8) was constitutional facially and as applied to Mr. Emerson, along with *United States v. McGinnis*'s reaffirmation of *Emerson* at the second step—that is, the means-ends step—of the two-step framework adopted in *NRA*. *See United States v. McGinnis*, 956 F.3d 747, 755–58 (5th Cir. 2020).  *Rahimi* described the reasoning in *Emerson* thus:

14

> "*Emerson* first considered the scope of the Second Amendment right 'as historically understood,' and then determined—presumably by applying some form of means-end scrutiny *sub silentio*—that § 922(g)(8) [was] 'narrowly tailored' to the goal of minimizing 'the threat of lawless violence.'"

61 F.4th at 450 (quoting *McGinnis*, 956 F.3d at 755 (quoting *Emerson*, 270 F.3d at 264)) (alterations in original).

In other words, *Emerson*, in substance, held § 922(g)(8) constitutional by using the kind of means-ends analysis that *Bruen* now forbids. And *McGinnis* reaffirmed *Emerson* based upon the now-abrogated second step of the *NRA* test.

But *Rahimi* did not address Fifth Circuit holdings *not* based on means-end scrutiny. Rather, *Rahimi* explained that "the [Supreme] Court expressly repudiated the circuit courts' means-end scrutiny—the second step embodied in *Emerson* and applied in *McGinnis*." 61 F.4th at 450; *see also Bruen*, 142 S. Ct. at 2126–27 (describing how the "two-step approach[] [] is one step too many," but maintaining that "[s]tep one of the predominant framework"—which asks whether "the challenged law regulates activity falling outside the scope of the right as originally understood"—"is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history") (internal quotation marks and citation omitted).

That *Bruen* did not abrogate the first step of the *NRA* two-step test bears emphasis here. Under that first step, *NRA* made clear that "a longstanding, presumptively lawful regulatory measure—whether or not it is specified on *Heller*'s illustrative list—would likely fall outside the ambit of the Second Amendment; that is, such a measure would likely be upheld at step one of our framework." 700 F.3d

15

at 196.  By incorporating *Heller*'s statement about laws such as § 922(g)(1) into the *first* step of its two-step test, *NRA* did not taint prior precedent about § 922(g)(1) simply because *NRA*'s *second* step "is one step too many."  *Bruen*, 142 S. Ct. at 2127.

In fact, *Bruen* is consistent with *NRA*'s position that whether a law is consistent with the historical understanding of the Second Amendment's scope is a threshold issue.  *See Bruen*, 142 S. Ct. at 2134–35 (finding—before addressing New York's posited historical analogues to its modern licensing regime—that "[t]he Second Amendment's plain text [] presumptively guarantees petitioners Koch and Nash a right to 'bear' arms in public for self-defense").  *Bruen* began its analysis by first observing that "[i]t is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."  *Id.* at 2134 (citing *Heller*, 554 U.S. at 580).

*Rahimi* likewise began its analysis by considering the same threshold question.  In finding that individuals subject to civil protective orders—and thus prohibited from possessing firearms under § 922(g)(8)—*are* "among 'the people' protected by the [Second] [A]mendment," *Rahimi* first distinguished individuals subject to civil restraining orders from those who are *not* "law-abiding, responsible citizens," who fall outside "the amendment's scope."  61 F.4th at 451–52.  *Rahimi* reasoned that, "while he was *suspected* of other criminal conduct at the time, Rahimi was not a convicted felon or otherwise subject to another 'longstanding prohibition[] on the possession of firearms' that would have excluded him."  *Id.* at 452 (quoting *Heller*, 554 U.S. at 626–27) (emphasis and alteration in original).  And

the Fifth Circuit subsequently reiterated this approach in *Daniels*. *See United States v. Daniels*, 77 F.4th 337, 343 (5th Cir. 2023) (explaining that *Rahimi* "reasoned that when *Heller* and *Bruen* used the phrase 'law-abiding,' it was just 'short-hand' to 'exclude from the . . . discussion' the mentally ill and felons, people who were historically 'stripped of their Second Amendment rights.' All others are presumptively included in the Second Amendment's ambit. Because Daniels is not a felon or mentally ill, *Rahimi*'s treatment of the 'law-abiding' moniker suggests that he has presumptive Second Amendment rights as well") (internal citations omitted).

*Rahimi*'s statement that "Rahimi was not a convicted felon"—which, if he was, "would have excluded him" from the Second Amendment's protections—is not quite an explicit *holding* that § 922(g)(1) *is* constitutional. But *Rahimi*'s reasoning does appear to reflect at least an assumption that Fifth Circuit precedent holding § 922(g)(1) constitutional remains binding. Thus, in the Court's view, to read *Rahimi* to abrogate *Darrington* and *Anderson* is too far a stretch. And because Fifth Circuit precedent holds that § 922(g)(1) is constitutional "[i]rrespective of whether [the prior felony] offense was violent in nature," *Everist*, 368 F.3d at 519, the Court will reject Defendant's as-applied challenge based on his assertion that his prior convictions were for non-violent crimes.

The Court also notes that, in unpublished and thus non-precedential decisions under plain error review, the Fifth Circuit has rejected several Second Amendment claims that § 922(g)(1) is unconstitutional since *Bruen* was decided.

*See United States v. Johnson*, No. 22-20300, 2023 WL 3431238, at *1 (5th Cir. May 12, 2023); *United States v. Pickett*, No. 22-110066, 2023 WL 3193281, at *1 (5th Cir. May 2, 2023); *United States v. Roy*, No. 22-10677, 2023 WL 3073266, at *1 (5th Cir. Apr. 25, 2023); *United States v. Hickcox*, No. 22-50365, 2023 WL 3075054, at *1 (5th Cir. Apr. 25, 2023).  Given the Fifth Circuit considered the defendants' arguments in the foregoing cases under plain error review, those panels at least found that whether § 922(g)(1) violates the Second Amendment was "not clear or obvious," that it was "disputed or unresolved," or that "there [was] an absence of controlling authority" on the point.  *Pickett*, 2023 WL 3193281, at *1 (citing *United States v. Rodriguez-Parra*, 581 F.3d 227, 230–31 (5th Cir. 2009)).

### III. <u>CONCLUSION</u>

The Fifth Circuit has previously held § 922(g)(1) constitutionally valid based on tradition, and *Bruen* did not abrogate that reasoning.  This Court must therefore hold § 922(g)(1) constitutional.  Accordingly, Letterman's Indictment [3] will not be dismissed under Rule 12 of the Federal Rules of Criminal Procedure, and the Court will deny Letterman's Motion [32] to Dismiss.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Kevin Letterman's Motion [32] to Dismiss is **DENIED**.

**SO ORDERED** this the 7th day of November, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

18